State *v.* Dunn.

THE STATE, Respondent, *vs.* DUNN, Appellant.

1. What is a sufficient provocation to mitigate a homicide from murder to manslaughter, is a question of law.
2. Every deliberate and intentional killing is murder in the first degree, within the meaning of our statute, although the design to kill was formed but a moment before it was executed.
3. It is error for a court to comment upon the evidence in a criminal case, unless requested so to do by the prosecuting attorney and the defendant.
4. A court is not required to select each fact constituting an offence, and instruct the jury to acquit if they have a reasonable doubt of that fact. A general instruction to acquit the accused, if they have a reasonable doubt of his guilt on the whole case, is sufficient.

*Appeal from Newton Circuit Court.*

The defendant was indicted, and convicted of murder in the first degree, for the killing of one Henry Knowl.

At the trial, Uriah Carroll, a witness for the State, testified that he was working in the field of defendant, his uncle, on the day Knowl received the injuries of which he died. When he returned home to his uncle's house at sundown, he found the

prisoner and Knowl there, both considerably intoxicated. After making a fire and bringing a bucket of water, witness went out to feed the stock. While thus engaged, a difficulty commenced in the house. He heard the defendant utter an oath as if in anger, and heard blows struck, after which the noise ceased. After he had finished feeding the stock, he went towards the house and through the open door saw Knowl lying on the floor. Witness did not go into the house, but passed towards the wood pile, as he thought, unobserved by the defendant. While there, he saw the defendant take Knowl on his back and carry him out to the fence and throw him over. Witness then commenced cutting wood, when defendant came out and told him to drag off " the d—d old son of a bitch." Witness took hold of Knowl and dragged him a distance, and returned to cutting wood. When he went into the house some time afterwards, Dunn asked him if Knowl still lived, and on being informed that he did, told witness to go and bring him into the house. Witness did so. Knowl was able to walk by being supported, but was much bruised and bloody in the face, and stated that his ribs were broken. When they reached the house, Knowl sank down in a helpless condition, and remained there and was kindly treated by the defendant, for two or three days, when he was removed to another house, where he shortly afterwards died. Witness stated that when he first went into the house after the difficulty, he saw no weapon but the shovel, the handle of which was much bent. Witness further testified that before Knowl died, Dunn told him (witness) that he had put some blood at a particular spot in the field which he pointed out, and requested him to swear that he found Knowl there, which he, through fear of the defendant, promised to do.

Wills, a physician, testified to the extent of Knowl's injuries, and gave it as his opinion that they caused his death. He also testified to the statements of Knowl, made three or four days before his death, when he said he knew he could not live long.

Knowl stated that he being a German and Dunn an Irishman, they were talking about the old countries, when suddenly

Dunn picked up a piece of iron or a chisel, and struck him first on one side of the head and then on the other, until he was knocked down in a senseless condition ; that when he became conscious, Dunn had a hatchet, and said that, " as he had done that much, he must kill him to keep him from informing against him ;" that thereupon Dunn struck at him with the hatchet, but Dunn's wife caught him and prevented the blow ; and that Dunn then carried him out and threw him over the fence.

The statements of Knowl were objected to by the defendant, but admitted.

The court gave the following instructions for the State :

1. The court instructs the jury that, if they believe from the evidence, that James Dunn beat Henry Knowl with a shovel, chisel and hatchet, or either of them, and that they were deadly weapons, and that the beating was done in a cruel and barbarous manner, and that it was done without sufficient or considerable provocation, and that he (Dunn) took Knowl, and carried him and threw him over the fence, and told Uriah Carroll to drag the d—d old son of a bitch off, and that said Knowl died from said beating and barbarous treatment, the jury may infer from all these circumstances that said Dunn inflicted such beating and barbarous treatment upon said Knowl wilfully, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought, with intent to kill said Henry Knowl, and if they do so find from all the evidence, they ought to find him guilty of murder in the first degree.

2. Malice, in a legal sense, means a condition of mind void of social duty, and fatally bent on mischief.

3. The word "wilful," as used in the statute, means that the act must be done intentionally.

4. The word "premeditatedly," as used in the statute, means that the act must be thought of, some time, however short, before the mortal blow or blows were struck.

5. The court instructs the jury that, if Dunn made use of a weapon or weapons likely to kill, and used them on Knowl, that he made preparations for concealing the body, that before

the death, he laid a train of circumstances tending to ward off suspicion, such evidence goes a great way to fix the grade of homicide at murder in the first degree. .

The defendant excepted to the giving of these instructions, and asked the court to instruct the jury that an intention to kill, and *malice* " matured by premeditation and deliberation, before the unlawful act," were necessary to constitute the crime of murder in the first degree, under our statute ; and that if they had a rational doubt, either of the intention to kill or of the malice, they could not find the defendant guilty of that degree of crime. The defendant also asked several other instructions, among which was one that the jury could not convict of murder in the second degree, if they entertained a rational doubt of the intention to kill. The others were upon the subject of manslaughter. All the instructions asked by defendant were refused. The court, of its own motion, instructed the jury to acquit if they had a reasonable doubt of defendant's guilt.

The defendant appeals to this court.

*P. R. Hayden*, for appellant. 1. No sufficient foundation was laid for the admission of Knowl's declarations. 1 Russ. Crim. Law, p. 752 and following. 2. The first instruction submits to the jury a question of law, in regard to the sufficiency of the provocation. 3. The fifth instruction given is erroneous in several particulars. It affirms that, if the killing was by a deadly weapon, it was murder in the first degree, whether wilful, deliberate and premeditated or not. It affirms that the acts of the defendant, after the beating and before the death of Knowl, to avert suspicion, tended to show that the killing was wilful, deliberate and premeditated *before and at the time it was committed*. It was a commentary upon the weight of the evidence. 4. The instructions asked by the defendant should have been granted. 5. The record does not show that the defendant was present when sentence was pronounced.

*Price & Hendricks*, on the same side. The evidence not only shows the absence of any malice, but deliberation and pre-

meditation are negatived. Under the statute, these are all necessary ingredients of the crime of murder in the first degree. The court erred in assuming that there was any such evidence. The court also erred in not defining the various degrees of felonious homicide, so as to have enabled the jury to discriminate between them. The evidence clearly made out a case of manslaughter.

*Gardenhire,* (attorney general,) for the State.

SCOTT, Judge, delivered the opinion of the court.

1. For the instructions given by the court, at the instance of the circuit attorney, this judgment must be reversed. The first instruction given cannot be sustained. A question of law should not be referred to a jury. What is a sufficient provocation to make what otherwise would be murder a less offence, is a question of law. The facts are found by the jury, and the court declares the law arising upon them, as they may be found. There can be no difficulty in such cases. If there is evidence tending to establish the facts constituting a provocation sufficient to extenuate murder, the jury should be instructed hypothetically. If the opinion of the court is so, the jury should be directed, that if they believe the facts (recapitulating them) are established which constitute the provocation, they should find according to the degree of extenuation such facts make in law. To tell the jury that if the killing was done without sufficient provocation, it is murder, without informing them whether the facts offered in evidence, if established to their satisfaction, would constitute a provocation, is leaving them to determine what is a sufficient provocation to extenuate murder. They may think one thing or another, or any act, however venial, would be a sufficient provocation. So the definition of murder would depend, in each case, upon the passions or prejudices of jurors.

2. The common law implied malice in every unlawful killing, and the burden of proof of extenuating circumstances, unless

they arose out of the evidence against the defendant, lay on him. Our act, defining murder in the first degree, is a transcript of the act of 1794, of the state of Pennsylvania. Under that statute, it has been held that, unless the circumstances of malice are proved, the law will presume the unlawful killing murder of the second degree. Under the act, the unlawful killing is presumed to be murder, but not murder in the first degree. Whenever it appears from the whole evidence, that the crime was, at the moment, deliberately or intentionally executed, the killing is murder in the first degree ; as if one, without uttering a word, should strike another on the head with an axe, this would be deemed premeditated violence within our act ; it will constitute the offence, if the circumstances of wilfulness and deliberation were proven, although they arose and were generated at the period of the transaction. If the party killing had time to think, and did intend to kill, for a minute as well as an hour or a day, it is a deliberate, wilful and premeditated killing, constituting murder in the first degree. So that, under the statute, there is no foundation for the notion, that the crime must have been preconceived some time before its perpetration.

3. It is objected, that the fifth instruction given at the instance of the State, is erroneous, as it falls within the prohibition contained in the 28th section of the 6th article of the act concerning Practice and Proceedings in Criminal Cases. That section enacts, that on the trial of any issue on any indictment, the court shall not sum up or comment upon the evidence, or charge the jury as to matter of fact, unless requested so to do by the prosecuting attorney and the defendant or his counsel. So much of that instruction as contains the direction to the jury, that the facts recapitulated went a great way to fix the grade of homicide at murder in the first degree, is erroneous. The facts referred to did not take place until after the death of the deceased, and could have no influence on the question, whether there was a provocation or other circumstance which mitigated the offence. They raised no question of law, and

could only affect the question of the guilt of the accused. The court, then, should not have told the jury that they went a great way to show that the defendant was guilty of the crime of murder. Whether the crime was murder or manslaughter, the accused might have equally feared the punishment of the law. The acts referred to certainly had no tendency to show the motive by which the accused was actuated in committing the offence. They could only have been dictated by a fear of punishment. If the instruction had been confined to the fact of the use of weapons likely to kill, it might have been given as evidence of malice and premeditation.

4. There is no warrant for the course of selecting each fact constituting the offence with which one is accused, and asking the court for an instruction to the effect, that if the jury have a reasonable doubt of that fact, they must acquit. All that is required of the court is, that, in suitable cases for such an instruction, it should tell the jury that, if, upon the whole case, they have a reasonable doubt of the guilt of the accused, he should be acquitted.

Judge Ryland concurring, the judgment is reversed, and the cause remanded. Judge Gamble not sitting.