Daniels, J.
The indictment was found in the court of general sessions of the county of Hew York, and by that court ordered into the court of oyer and terminer for the same county, where the prisoner was tried upon it. Before the trial was commenced, the objection was raised by his counsel, that the court of sessions could not, by its ex parte order, and without notice, send the indictment to the court of oyer and terminer. And an application was at the same time made on his behalf, for an order directing it to be returned again to the court of sessions, for trial before that tribunal. Two reasons were assigned in support of the objection taken, and the application which was made. One of these was, that the court of sessions did not possess the authority to send the indictment in this manner into *264 the court of oyer and terminer for trial. But that was evidently unsound, in view of the very general and unqualified authority created for this purpose by the statute. For it has provided, in clear terms, that courts of sessions may, merely by an order entered in their minutes, send indictments for offenses triable before them, to the next court of oyer and terminer to be held in their respective counties, there to be determined according to law (3 R. S. [5 ed.] 305, § 7).
The order to be made was in no respect rendered dependent upon the consent, or the, hearing of the prisoner. But the power to make it was created in such terms as to render its exercise dependent only and solely upon the discretion of the court in which it might be entered. No notice of the application for the order could therefore be required to be given to the prisoner. The only restriction imposed upon the exercise of the power was, that the order should send the indictment to the next court of oyer and terminer. Precisely what the legislature intended to accomplish by the use of the term “next” has not been made to appear. But it probably was to distinguish the court to which the indictment might be sent from a succeeding and more distant term, in that way preventing oppressive delay in the disposition of the case. The general object of the law in criminal cases is to secure a speedy trial of the accused, and this term may very well have been inserted in the section for the purpose of accomplishing that object. As so construed, the statute requires the indictment to be sent to the nearest, or most immediate, term of the oyer and terminer, for there the trial will most speedily be had. The order in this case accomplished that result, and no good reason affecting its validity has been made to appear.
It was further urged on behalf of the prisoner, that he had the statutory» right to be tried in the court of sessions, for the reason that in case of his convic *265 tian, the verdict might be reviewed, on the ground that it was against the weight of evidence, or against law, or because justice might require a new trial to be had. And for that purpose he would be entitled to a stay of proceedings as a matter of right (L. 1855, c. 337, § 3). But no provision was inserted in this act in any form depriving the court of the power given to it by the Revised Statutes, of still sending the indictment into the court of oyer and terminer for trial. Neither did it in any form confer upon the prisoner the right to insist upon his trial taking place in the court of sessions because of the fact that the indictment happened to be there found. Nothing can be found in this act inconsistent with the exercise of the authority previously given to the court to send the indictment into the court of oyer and terminer for trial. And as that is the case, the preceding statute cannot be held to be in any manner affected by this subsequent enactment. In this respect there is no conflict between the two; and the former, for that reason, cannot be held to be qualified, or superseded by the latter. Upon this subject the invariable rule of construction has been held to be that the earliest act still remains in force, unless the two are manifestly inconsistent with, or repugnant to each other. The repeal of statutes by implication is not favored, but the courts are bound to uphold the prior law if the two acts may well subsist together (Bowen v. Lease, 5 Hill, 221; People v. Myers, 2 Hun, 6).
The power of the court of sessions, notwithstanding the existence of the act of 1855, over the transmission of its indictments to the court of oyer and terminer, was considered by this court in the case of Thompson v. People (6 Hun, 135), and it was there held that the prisoner had no vested right to insist upon being tried in the court of sessions, because of the fact that the indictment had there been presented against him. Upon the same point, the case of Dolan *266 v. People (Id. 493), is a further authority against the position now taken in behalf of the prisoner. The objection urged, as well as the application made in his behalf, was properly overruled and denied by the court in which the trial took place.
The prisoner was placed upon trial under the indictment for the murder of Mary Dean. He was a witness in the case on his own behalf, and the evidence given by him certainly tended to exculpate him from the charge contained in the indictment, so far as it alleged him to be guilty of murder in the first degree. After his examination was completed, and the defense had concluded its evidence, it was proposed by the prosecution to show the statement the prisoner had made at the time when he surrendered himself to a justice of the peace of Hudson county, in the State of New Jersey. The witness was asked whether the prisoner at that time stated “ that this girl had lived with him until he had spent all his money, and that she then left him and went with another, man, and that he was jealous ?” The court allowed the question to be answered, and to the decision then made att exception was taken. The witness then answered that he did so state, that was what he understood. It is true that this evidence would have been proper as a part of the case, as it was presented on behalf of the prosecution. But in addition to that, it was directly inconsistent with what the prisoner himself had testified to, and for that reason the court was entirely justified in allowing it to be given at the time when it was offered. But if that had not been the case, the power to receive it was still entirely discretionary on the part of the court; and as that discretion cannot be held to have been improperly exercised under the circumstances, the admission of this testimony cannot now be urged as a ground of error in the case.
*267 It appeared that the prisoner had at one time resided in the same house with the deceased ; that he met her at that place upon Saturday night and conversed with her; that he was there again on the succeeding Sunday evening; and after apparently being engaged in conversation with her for a few moments, struck her upon the neck with a razor, thereby inflicting a wound which severed the jugular vein, and very shortly afterwards resulted in her death. The prisoner then fled and went into the State of New Jersey, where he afterwards, on reading an account of the death of his victim, voluntarily surrendered himself. Evidence was given in the case, tending to show that he had previously threatened to injure the deceased, and while he denied making the threats, as they had been related, the case was still left upon this point in such a form as to render the existence of these threats a proper subject for the consideration of the jury. It appeared, further, that in the afternoon preceding the homicide, he was seen to pass along Twenty-sixth street and opposite No. 188, where the deceased resided; and his conduct then appears to have been such as certainly to create a suspicion that his movements were stimulated by the contemplation of the act afterwards performed by him. This conduct, together with the cir-, cumstance that he carried the razor in his pocket and used it, so soon after the efforts made by him for that purpose brought the deceased to where he was, indicated the existence of a determined purpose in his mind to take her life. Whether such was his intention or not, was a subject which could only be ascertained by a critical and faithful consideration of the circumstances, and they were sufficient to be submitted to the jury for their examination and determination.
To constitute the crime charged in the indictment, the law required that it should be established as a matter of fact, that the prisoner had taken the life of the *268 deceased with a premeditated as well as a deliberate design to effect her death (L. 1873, c. 644).
Before the enactment of this chapter, a premedi- . toted design alone to effect the death of the person killed was all that was required to create the crime of murder in the first degree; and, as that was construed by the courts, all that was necessary to constitute the offense was, that the intent should precede the commission of the criminal act. No determinate period of time was required to intervene for that purpose ; but it was held to be sufficient for the act to be produced by, and follow the existence of, the intent (People v. Clark, 7 N. Y. 385; Shufflin v. People, 62 Id. 229; Thomas v. People, 67 Id. 218).
By the enactment of the law which took effect in 1873, a material change in this respect was made ; for it required that deliberation should also take place before the design formed was carried into execution. No particular degree or extent of deliberation was required to be shown,' but it was rendered necessary that the mortal blow should be the result of a deliberate, as well as a premeditated, design to take life. What the legislature seems to have required by the addition of this.term, is that there should be evidence in the case indicating the existence of the fact that the prisoner had considered and weighed in his mind the propriety of carrying his felonious intention into execution. A mere rash, or hasty, execution of the intent, has been no longer allowed to be sufficient; but the execution of the guilty purpose is required to be settled and determined upon reflection, before the crime of murder in the first degree can be committed. A fixed and determined purpose is rendered necessary, as distinguished from a mere impulsive, fatal act. But to constitute the deliberation which the statute has required, it is not contemplated that the prisoner should brood over the existence of the intent to take life for any particu *269 lar period of time. It will be sufficient for the purposes of the law, that the execution of the design shall appear to have been matured, and confirmed by consideration, or reflection, as distinguished from the influence of a passion suddenly aroused; and all that can be necessary for that purpose, is the intervention of such a period of time as to afford an opportunity for. the exercise of these mental functions. This was held to be the true meaning and requirement of the statute in Dolan v. People (6 Hun, 493, 504, 505). The same point has frequently arisen under similar statutes enacted in other States, and the conclusion has been generally adopted, that where the accused has had the time to think and reflect upon the execution of a criminal intent to take life, and such thought or reflection has taken place, it will be sufficient to constitute the deliberation for this purpose required by the statute, although no appreciable period of time may intervene between that process of the mind and the commission of the criminal act (State v. Trune, Wright [Ohio], 20, 30; Milton v. State, 6 Neb. 136; Green v. Commonwealth, 83 Penn. 75, 80; State v. Dun, 18 Mo. 419, 424; State v. Foster, 61 Id. 549; State v. Wieners, 66 Id. 13; Nye v. People, 35 Mich. 16; McAdams v. State, 25 Ark. 405; Palmer v. State, 29 Id. 248; People v. Nichol, 34 Cal. 212; People v. Williams, 43 Id. 344; State v. Millain, 3 Nev. 409, 450; Craft v. State, 3 Kans. 450; Fouts v. State, 4 Green [Iowa], 500).
In the charge which was made to the jury the rule, as it has been sustained by these authorities, was observed by the court; for the jury were directed that in order to establish the crime of murder in the first degree, deliberation and premeditation must exist. It was then added that no time was prescribed within which these operations of the mind must occur. That it was sufficient, if their exercise was accomplished when the deed was done resulting in the death. It is *270 not necessary under our statute that a man should sit down and ponder for an hour, or half an hour, and involve in that pondering, deliberation and premeditation, to establish the crime of murder in the first degree. It is enough if there is time for the mind to think upon, and consider the act of killing, and meditate upon it and weigh it, and then determine to do it. It is enough if the mind operates in these two respects, to accomplish it and to present all the elements that are necessary to establish murder in the first degree. You are required also to consider all the circumstances under which this crime was perpetrated, the circumstances under which the razor itself was used, the time when it was employed, and the part of the body which was struck, all these bearing upon the deliberation and premeditation charged to have existed when the crime of which the prisoner is accused was committed. In this connection the learned judge illustrated what would be required to be done for the purpose of creating a crime of this nature ; but as the illustration made no substantial change in the directions already referred to, which migh t be understood to be detrimental in any respect to the prisoner, it is not necessary to consider what was said upon the subject. By the extracts which have already been given from the charge, it is entirely evident that the prisoner had the full benefit, at the trial, of all that the law required to be given him upon this subject. The only exception taken to the charge was directed to what was said in this connection. And as the learned judge was fully supported by the existing authorities, in the manner in which this point was submitted to the jury, the exception itself cannot be sustained.
When the jury rendered their verdict, declaring the prisoner to be guilty of the crime of murder, as that was charged, in the indictment, his counsel requested that the jurors should be, and they were, polled. And *271 he asked the court to inform them that the answer given should be the conscientious, individual opinion of each man. The court declined to comply with that suggestion, and the counsel for the prisoner excepted. It was the undoubted right of the prisoner to have the jury polled (Jackson v. Hawks, 2 Wend. 619; Blackley v. Sheldon, 7 Johns. 32; Fox v. Smith, 3 Cow. 23).
But for that purpose, all that could be required under the practice existing upon the subject was that each juror should be separately asked whether the verdict rendered by the foreman was his verdict (3 Whart. Crim. Law, 7 ed. § 3194; 1 Bishop Crim. Pro. 2 ed. § 1003; Labar v. Koplin, 4 N. Y. 547).
In the last case, it was declared that the act of polling the jury “ is performed by the clerk, who, as he calls over the list of the jurors, asks them one by one, or by the poll, the simple question : 6 Is this your verdict ? ’ This question requires but one answer, and still embraces all the legitimate objects of polling the jury. The party has no right to dictate the manner in which a jury shall be polled, or to insist on any other question being put to them than the simple one to ascertain whether they agree to the verdict as presented” (Id. 551).
After the prisoner was convicted, a motion was made on his behalf for a new trial, because of newly-discovered evidence. That motion was made under the authority of chapter 295 of the Laws of 1876. By this act, the power to grant a new trial on motion of the prisoner after his conviction, is in terms vested alone in the presiding justice, or judge, of the court of oyer and terminer. Ho provision has been made for appealing from the determination, whether that be for or against the prisoner; and because of that omission, it may be doubted whether the propriety of the decision which was made upon this application, is now in any form before this court for its examination.. Prior to *272 the enactment of this statute, no power existed authorizing a verdict of this nature to be set aside on such an application (Buel v. People, 78 N. Y. 492). And as it now exists, it is derived solely and wholly from this statute. The only proceeding which could possibly be taken for the purpose of securing a reconsideration of the point, is that of a writ of error. But as the office of that writ has been defined and declared by the statute providing for it in criminal cases, it has been limited to questions arising either upon the record itself, or reserved by way of exception upon the trial (People v. Thompson, 41 N.Y. 1; Gaffney v. People, 50 Id. 416; People v. Casey, 72 Id. 393).
The prisoner’s counsel, it is true, excepted to the denial of this motion for a new trial, but nothing is contained in the statute, either authorizing or warranting that course ; and for that reason it has been held under a very similar provision applicable to the trial of civil actions, that the decision made cannot .be brought up for review in that manner (Willis v. Weaver, 58 N. Y. 681; Matthews v. Meyberg, 63 Id. 656).
But if the point on which the motion was made should now be considered, no change could properly be directed in the disposition which was made of the case on the affidavit presented as the foundation of the motion; for it merely disclosed the fact that two of the witnesses, who were sworn upon the trial, stated that Mrs. Dean threatened to strike the prisoner, unless lie went away, and answered his inquiry whether she meant to strike him by saying that she did ; and that soon after that, she went into the room where one of these persons was, holding both hands to her throat, and soon died. This was, no doubt, material evidence to be given upon a trial of this nature ; but in view of that which was taken, it is not probable that it would have produced any different result. Statements of a contradictory nature are frequently *273 given for the purpose of casting discredit upon the evidence of witnesses sworn in the course of judicial proceedings. But ordinarily, little weight is attributed to them, particularly when it appears that they have been hastily made, and may very well have been misunderstood by the person called upon to disclose them. In the examination of persons sworn in the course of legal proceedings, their attention is closely and critically confined to the events related by them, and what they may say upon such occasions, where their statements are consistent with, and supported by the leading circumstances of the case, is justly regarded as deservable of credit, although on preceding conversations, not subjected to the obligations and solemnities of an oath, they may have differed in their relations of the facts. In the conversation stated in the affidavit, the person making it may very well have misapprehended what was intended to be said. It is quite common for mistakes of this nature to arise, and for that reason mere admissions, orally made, are not considered either as satisfactory, or controlling evidence. No good reason exists for believing that the testimony of this person, if it had been given upon the trial, would have made any change in the final disposition of the case. It was insufficient to justify a direction requiring another trial of the indictment, and the order made was consequently a proper one. No other points have been urged in the prisoner’s behalf, and as those which have been considered have each been found incapable -of being sustained, it follows that the conviction must be affirmed.
Davis, P. J., concurred.
This decision was affirmed by court of appeals, February, 1882.