[No. 1516, March 20, 1913.]

STATE OF NEW MEXICO, Appellee, v. FRANCISCO GRANADO, Appellant.

### SYLLABUS (BY THE COURT).

1. Evidence reviewed and held to warrant a verdict of murder in the first degree.

2. Where, in the trial of a person charged with murder in the first degree, there are no facts or circumstances in evidence, tending to reduce the offense to murder in the second degree, but such facts and circumstances all show that the crime was in the first degree, the court is not required or authorized to instruct as to murder in the second degree.

Appeal from District Court, Socorro County.

### OPINION OF THE COURT.

ROBERTS, C. J.—The defendant was tried by a jury, in the District Court of Socorro County, for the crime of murder, adjudged to be guilty of murder in the first degree, and by the court duly sentenced to death. From the judgment an appeal was prosecuted to this court, a transcript of record filed as required by law, but no brief was filed on behalf of appellant. Had the case not been of such a grave character we would have affirmed the same, because of such default but in view of the gravity of the punishment we decided to carefully review the record and evidence and ascertain whether or not error had intervened by which defendant had been deprived of any of his legal rights.

State v. Granado, 17 N. M. 542.

The undisputed facts, disclosed by the record, are in substance as follows: About 7:30 o'clock on the evening of the 19th day of February, 1912, the defendant, in company with one Juan Taranga, entered the store of the Mogollon Mercantile Company, at Mogollon, Socorro County, New Mexico, armed with Winchester rifles and demanded that William S. Clark (for the killing of whom the defendant was prosecuted), Eugene F. Burns and Freeman, the manager of the store, should throw up their hands and deliver to them the money in the store. Freeman and Clark started toward the defendant and Taranga, ordering them out of the store, neither Freeman nor Clark being armed, thereupon Taranga shot and killed Freeman and the defendant shot Clark, who died almost instantly. The rifles were then leveled to Burns and he was compelled to open the safe in the office, from which the defendant and Tarranga took $3,710, and made their escape.

It further appears from the evidence that it had been the custom of the Mogollon Mercantile Company to pay its employes, of whom it had quite a number, on the 20th day of the month, the money for which was sent in by the banks usually on the 18th or 19th, and that the defendant was familiar with such custom and knew the company had, at the time of the robbery, the money for the pay roll in the office safe.

After securing the money from the safe the defendant and Taranga kept the witness Burns covered with their rifles and backed out of the store and fled. They were followed by the sheriff and a deputy and within two or three days were located in a house some fifty or one hundred miles from the scene of the crime. After locating them, the sheriff sent his deputy some two or three hundred yards to get additional help, and was watching the house in company with a farmer, who had accompanied the sheriff and his deputy, from the adjoining house. Suddenly the two bandits sprang from the door of the house and opened fire on the sheriff and his companion. In the battle which ensued Taranga was killed and the defendant retreated inside the house, and was later persuaded to surrender. Upon searching Taranga something over

$2,000 was found on his person and the remainder of the booty was found on the person of the defendant and secreted in the house where they had taken refuge. All the above facts were fully established by the evidence, and upon no proposition material to the establishment of the guilt of the defendant, was there left the slightest doubt. The defendant did not testify, and the only evidence offered on his behalf was the testimony of two witnesses to the effect that he had, before the commission of the crime, been a hard working, industrious man. This fact, however, would not excuse or exculpate the crime or save the defendant from the punishment prescribed by the law. From the careful examination, which we felt compelled to make of the evidence in the record, in view of the gravity of the penalty, and defendant's lack of legal assistance in this court, we are satisfied that the evidence fully justified the verdict; indeed, no other verdict could have been returned by the jury, without violating their oaths.

We find no error in the record, prejudicial to the rights of the defendant. Seldom has a transcript of record been filed in this court which was so free from grounds upon which error might be predicated. It appears that the lower court gave to the defendant the benefit of every doubtful proposition that arose in the case and was far more favorable to him in the matter of excluding testimony to which objection was interposed than required by the law.

In the lower court a motion for a new trial was filed which was overruled by the court. In this motion two specific grounds were assigned, which we will discuss, as these are the propositions which would doubtless have been argued in this court.

The first ground is that the court erred in failing to charge the jury as to murder in the second degree. Under the facts there was no error in this. Indeed the court would have committed error had he so instructed. There were no facts or circumstances shown tending, in any degree to reduce the grade of the offense. As was said by Justice Laughlin, in the case of Sandoval v. Territory,

8 N. M. 573: "It is plain therefore, that this court has held in effect, if not in direct words, that it is the duty of the trial court to confine the attention of the jury to the issues involved by the evidence, and the court, at its peril, must instruct on all the law applicable to all the evidence, and then confine the jury to those issues alone."

2 It is settled law in this state that the court under an indictment charging murder in the first degree, is not required to instruct in any of the lower degrees, when there is no evidence warranting such an instruction. All murder which is committed in the perpetration of or attempt to perpetrate any felony, is murder in the first degree. Sec. 1, chap. 36, S. L. 1907. Certainly there could be no doubt, under the facts, but that all the elements of the crime of murder in the first degree were clearly established.

The second ground assigned in the motion for new trial was as follows:

"Because the court erred in admitting the testimony of Amos E. Green, Justice of the Peace of Precinct Number one, Socorro County, New Mexico, as to a voluntary statement made to him by defendant at his preliminary hearing before said justice of the peace, for the reason that by the testimony of the justice it plainly appears that defendant was not properly warned that his said voluntary statement might or would be used against him in his trial, but was led to believe that it might be used in his favor, and thereby said voluntary statement was obtained by fraud and deceit, as no self-serving declaration of defendant could possibly have been admitted in his favor."

This evidence of the justice of the peace discloses the want of merit in this contention, and shows that the defendant was fully advised as to his rights in the premises. We quote the testimony of the justice of the peace.

Q. Was there any promises made of mercy or any inducement put up to him?

A. Not at all that I know of.

Q. Any threats made?

A. No, sir.

Q. Any statement made as to whatever he might say,

didn't have to answer if he wanted to, that he had a constitutional right not to incriminate himself?

A.   He was advised to that effect.

Q.   What did he say?

A.   When I read the complaint I told him he didn't have to answer any questions, any evidence would be against him or for him; that it would be brought up before in other hearing. That he could make any statement he felt, do it voluntarily.

Q.   Did you tell him what he said might be used against or for him?

A.   It might, I said.

Q.   Go ahead and state what he said.

A.   When I read the complaint to him afterwards he plead guilty to the charge for the killing of Clark. He said yes, I killed him.

Q.   William S. Clark?

A.   He claimed one of the clerks there; didn't know what his name was only Clark.

Q.   And at the time charge in the complaint that was before you at the time?

A.   Yes, sir.

From the above it is very apparent that the court committed no error in permitting this evidence to go to the jury.

Finding no error in the record the judgment of the lower court is affirmed and the judgment and sentence of the court shall be executed on Friday, April 25, 1913.