## STATE v. SMITH.

### [No. 2356.   Jan. 22, 1921.]

### SYLLABUS BY THE COURT.

1.   Murder in the second degree is murder with malice, but without deliberation.                                    P. 493

2.   "Malice" and "premeditation" defined.          P. 491

3.   Malice in the law of murder is not a conclusion of law, but an inference of fact.                                 P. 494

4.   In a case where the prosecution attempts to prove murder in the first degree, prepetrated by lying in wait, and the defendant pleads self-defense, the court properly instructed the jury on murder in the second degree.          P. 495

Appeal from District Court, Socorro County; M. C. Mechem, Judge.

O. W. Smith was convicted of murder in the second degree, and he appeals. Affirmed.

JAMES G. FITCH and M. C. SPICER, both of Socorro, for appellant.

Evidence showed appellant guilty of first degree murder or not guilty. As to what constitutes murder of first and second degree, see "Lying in wait," 2 Bouv. L. Dict.; 2 Bish Cr. L., Sec. 727; Riley v. State, 9 Hump. (Tenn.) 647, 660, 661; State v. Tyler, 122 Iowa 125, 97 N. W: 983; People v. Sanchez, 24 Cal. 17, 28, 29; Sec. 1, C. 36, L. 1907; State v. Granado, 17 N. M. 542, 44, 45.

Instruction on degree not sustained by evidence is improper. Territory v. Romine, 2 N. M. 114, 125; Territory v. Romero, 2 N. M. 474; Territory v. Anderson, 4 N. M. 213; Territory v. Nichols, 3 N. M. 103; Territory v. Baker, 4 N. M. 236; Territory v. Thomason, 4 N. M. 154; Territory v. Pridemore, 4 N. M. 275; Territory v. Fewel, 5 N. M. 34; Faulkner v. Territory, 6 N. M. 464; Territory v. Friday, 8 N. M. 204, 209; Sandoval v. Territory, 8 N. M. 573, 582-3; Territory v. Hendricks, 13 N. M. 300, 311; Territory v. Clark, 15 N. M. 35, 44; Territory v. Kimmick, 15 N. M. 178,

180-1; Territory v. Archuleta, 16 N. M. 219, 223; State v. Granado, 17 N. M. 542; Territory v. Lynch, 18 N. M. 15, 35; State v. Dickens, 23 N. M. 26, 30-1.

NICHOLAS D. MEYER, Asst. Atty. Gen., for the State.

Instruction on and verdict of murder in the second degree were proper. 2 Bish. N. Cr. Pro. Sec. 602; Aguilar v. Terr., 8 N. M. 505; Terr. v. Guillen, 11 N. M. 194; Terr. v. Padilla, 8 N. M. 510.

Unexplained homicide is murder in the second degree. People v. Gibson, 17 Cal. 283; State v. Silk, 146 Mo. 240; Daniel v. Com., 77 Va. 281; State v. Lane, 64 Mo. 319; People v. Gibson, 17 Cal. 283; Farrar v. State, 42 Tex. 265; Terr. v. Guillen, 11 N. M. 194; Terr. v. Padilla, 8 N. M. 510; Aguilar v. Kerr, 8 N. M. 496; Wharton Homicide, Sec. 149; State v. Lane, 64 Mo. 319; People v. Gibson, 17 Cal. 283; Farrar v. State, 42 Tex. 265.

The court should charge on every grade of homicide on which the defendant can be found guilty. Bell v. State, 140 Ala. 57; Locke v. Com., 44 Kan. 232; State v. Kidd, 24 N. M. 25; Terr. v. Kimmick, 16 N. M. 185.

OPINION OF THE COURT.

RAYNOLDS, J. Upon filing of the former opinion a motion for rehearing was made. On account of the importance of the subject we have deemed it advisable to withdraw the former opinion and reconsider the entire case.

Appellant, defendant below, was indicted at the September, 1918, term of the district court of Socorro county for the murder of Fred Richards; the indictment being in the usual form and charging first degree murder.

At the trial the evidence on both sides showed that defendant and deceased owned adjoining ranches on Mineral creek in said county, defendant's being the upper ranch; that there were disputes over water rights, and on the day previous to the homicide, while the deceased was in Mogollon, his wife, with the assistance of a hired man, partially cut defendant's dam, over the objection of defendant, who was present at the time.

There was some altercation between defendant and the wife, and the evidence was conflicting as to whether the defendant offered personal violence towards the hired man. No threats were made except the defendant said he would bring suit, and the wife stated she would report the matter to her husband.

The evidence on both sides is in accord that defendant shot deceased while the latter was riding up and northward along the road running through the defendant's ranch, that both defendant and deceased were armed with rifles at the time, deceased carrying his rifle in a scabbard on the right of his saddle, and that but one shot was fired, that by the defendant, which proved instantly fatal. There were no eye witnesses. In all other respects the evidence introduced on behalf of the prosecution and the defense was diametrically opposed.

The state sought to prove by circumstantial evidence that defendant fired the fatal shot while kneeling behind a small bush at the right of the road facing northward; that a person behind this bush, while concealed from the view of any one passing northward along the road, had a view of the road and any one traveling upon it. The evidence introduced in behalf of the state was, in effect, that there were found footprints, claimed to be those of the defendant, near this tree or bush, knee and toe prints immediately behind it,· an empty cartridge shell of the size and kind used in defendant's rifle near by, and there was also evidence as to the course of the bullet from right to left through the body of the deceased, the tearing of a leaf, the fresh break of a dead twig, and a hole with a bullet in it in the trunk of a tree on the left-hand side of the road, all of which were claimed to be in line with the supposed position of the body of the deceased and the bush on the right-hand side of the road, from which it was claimed the shot had been fired.

Defendant introduced testimony tending in part to contradict and in part to explain some of the circum-

stances testified to by the state's witnesses, which are hereafter referred to, and also testified that he had gone. out over his ranch that morning, taking his rifle with him with a view to killing a rabbit or a squirrel; the he had been up to where his dam was cut and was returning down the road towards his house carrying his rifle over his left shoulder, when he met deceased coming up the road on horseback; that as soon as deceased saw him deceased started to pull his rifle from the scabbard. Defendant testified that he warned deceased not to pull his rifle or he would shoot, and that deceased persisted and succeeded in drawing his rifle from the scabbard; that his horse became restive and turned toward the left, which delayed deceased in getting his rifle into position to fire. Defendant, after deceased had gotten his rifle out of the scabbard, pulled his own rifle off his shoulder, taking several steps to the right of the road, and fired the fatal shot. Deceased fell from his horse and died almost instantly. His hat, rifle, and quirt were found by his body.

The court in several of its instructions defined murder in the second degree, and told the jury that they might return a verdict in that degree. The defendant objected to each of these instructions and excepted to them at the time they were given. The jury returned a verdict of guilty in the second degree, and after a motion for a new trial had been overruled, the court sentenced the defendant. From this verdict and sentence the defendant has prosecuted this appeal.

The appellant contends that the court committed error by instructing the jury as to murder in the second degree over the defendant's objection, and that there was no evidence to support such an instruction, nor to support a finding by the jury of murder in the second degree. This is the sole proposition in this case. It is urged by the appellant that there is no middle ground in a case of this kind, but that it is one either of murder in the first degree or justifiable homicide on the ground of self-defense.

The law in this state is that the court must instruct in every degree of the crime charged when there is evidence in the case tending to sustain such degree (Territory v. Romero, 2 N. M. 474; Territory v. Romine, 2 N. M. 114; Territory v. Nichols, 3 N. M. [Gild.] 103, 2 Pac. 78; Territory v. Friday, 8 N. M. 204, 42 Pac. 62), and that it is error to refuse to instruct on any degree of the crime charged when there is evidence in the case of such degree (Territory v. Lynch, 18 N. M. 15, 133 Pac. 405). It has also been held that the court should refuse to instruct on a degree of the crime charged when there is no evidence of such degree. Territory v. Anderson, 4 N. M. (Gild.) 213, 13 Pac. 21; Territory v. Baker, 4 N. M. (Gild.) 236, 13 Pac. 30; Faulker v. Territory, 6 N. M. 464, 30 Pac. 905; Territory v. Thomason, 4 N. M. 154, 13 Pac. 223; Sandoval v. Territory, 8 N. M. 573, 45 Pac. 1125; Territory v. Clark, 15 N. M. 35, at page 44, 99 Pac. 697; Territory v. Kimmick, 15 N. M. 178, 106 Pac. 381; Territory v. Archuleta, 16 N. M. 219, 114 Pac. 285; State v. Granado, 17 N. M. 542, 131 Pac. 497. It has been further held that it is error to instruct on a degree of the crime charged when there is no evidence to support the instruction on such degree. Territory v. Pridemore, 4 N. M. (Gild.) 275, 13 Pac. 96; Territory v. Fewell, 5 N. M. 34, 17 Pac. 569; Territory v. Hendricks, 13 N. M. 300, 84 Pac. 523.

By our statute (section 1459, Code 1915) all murder which shall be perpetrated—by means of lying in wait —shall be deemed murder in the first degree, and all other kinds of murder shall be deemed murder in the second degree. It is conceded by the state and by the appellant that the act of lying in wait supplies the element which raises the crime to the grade of murder in the first degree, and that, if such fact—that is, lying in wait—is proven, together with the elements that constitute murder in the second degree, it is not necessary for the state to go further and prove deliberation.

The evidence for the state in this case was entirely circumstantial, the only eye witness being the defendant,

whose testimony was diametrically opposed to that of the state and was, in effect, that he was justified in the killing on the ground of self-defense. There was evidence introduced by witnesses for the defense that the course of the bullet did not pass over the bush in question, and this circumstance tended to confirm defendant's testimony that he shot the deceased from a point near the bush, but not from behind it. He explained the footprints by the fact that he had sat down near the bush after he had killed Richards.

In order that we may properly consider whether there is any evidence to support the verdict of the jury for murder in the second degree, it is necessary to ascertain the meaning of the phrase "murder in the second degree" as used in the statutes of this state. The only definition which our statutes contain, after defining murder and giving specific instances of murder in the first degree, is that "all other kinds of murder shall be deemed murder in the second degree." The statutes are as follows:

"Murder is the unlawful killing of a human being, with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned." Code 1915, § 1456.

"Sec. 1457. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof.

"Sec. 1458. Malice shall be implied when no considerable provocation appears, or when all circumstances of the killing show a wicked and malignant heart."

Section 1459 then proceeds to designate eight different means or methods by which, or in which, when murder is committed, it is murder in the first degree, and concludes with the phrase "and all other kinds of murder shall be deemed murder in the second degree." Reading the definition of murder with its element of malice aforethought, as defined in the statute, the definition would read as follows:

(1) Murder is the unlawful killing of a human being with that deliberate intention aforethought unlawfully to take away the life of a fellow creature which (inten-

tion is manifested by external circumstances capable of proof.

(2) Murder is the unlawful killing of a human being with that deliberate intention aforethought unlawfully to take away the life of fellow creature which (intention) shall be implied where no considerable provocation occurs.

(3) Murder is the unlawful killing of a human being with that deliberate intention aforethought unlawfully to take away the life of a fellow creature which (intention) shall be implied when all circumstances of the killing show a wicked and malignant heart.

The definition of murder as the unlawful killing of a human being with malice aforethought is the common-law definition of murder, but if the statutory enactments as to malice herein set out are exclusive definitions of malice, then malice is confined to a specific intent, namely, that deliberate intention to take away the life of a fellow creature, and must be present to make the crime murder. Again, if these statutory definitions of murder and malice are combined, as above set out, we have in this state only one kind of murder, which is the unlawful killing of a human being with that deliberate intention aforethought to take away the life of a fellow creature, and the specific, deliberate intention, or deliberation, is an essential element of both first and second degree murder because it is included in the general definition of murder. We do not believe that the Legislature intended to thus limit the crime making deliberate intention, or deliberation, an essential element of all murder, but it probably sought, as has been done in other states, to distinguish between certain kinds of murder, some of which are deemed more atrocious than others.

The history of the division of common-law murder into degrees begins in America with the statute passed in Pennsylvania in 1794, which is similar to our law and which has been copied, with some changes, in many

states. It would unduly extend this opinion to call attention to the various statutes on the subject, but a good discussion, together with the history of the subject and the reasons for the changes in the law, can be found in Wharton on Homicide, §§ 105 and 106; Wharton's Criminal Law (11th Ed.) vol. 1, §§ 501 and 502; Commonwealth v. Green, 1 Ashm. (Pa.) 289 at page 299; State v. Dunn, 18 Mo. 419, at pages 423 and 424; People v. Bealoba, 17 Cal. 389, at page 396; Whiteford v. Commonwealth, 6 Rand. (Va.) 721, 18 Am. Dec. 771, note at page 774; 21 Cyc. "Homicide," 719.

It being the intention of the Legislature to establish two degrees of murder in this state, it is our duty to define them, if such a definition can be made. The statutes themselves, differing in this respect from many other states, give no definition of murder in the second degree, except "all other kinds of murder shall be deemed murder in the second degree," and those setting forth specific offenses which are murder in the second degree—namely, sections 1463, 1464, and 1466, Code 1915—do not give us any light as to the elements constituting the crime. In our opinion, the statutes above cited which use the word "malice," both express and to be implied, do not define "malice," but as to express malice merely state the way or means by which a certain kind of malice —that is, the deliberate intention to take away the life of a fellow creature—shall be ascertained, manifested, or proved, and further state the essential conditions precedent from which, when found, malice in the law of homicide shall be implied as a conclusion of law. These statutes are rules of evidence, and not definitions of malice. This conclusion is borne out by the fact that specific deliberate intention as the essential element in murder would narrow or limit the common-law definition of murder and give the word "malice" in murder a more restricted meaning than it has ever had.

With this view of the statute in mind, it is necessary to define malice as the word is used in relation to murder and to ascertain the meaning in which express and

implied malice are used in our statute above quoted. The difficulty of defining malice may be realized from the following quotation from Bishop's New Criminal Law, vol. 2, § 675.

"We have seen in the meaning which these words (malice aforethought) bore as far back as 1389, and which has been continued and rendered more exact by multitudes of interpretations down to the present day, is that only and particular thing the presence whereof makes a felonious homicide murder, and the absence whereof leaves it manslaughter. And still, after thousands of judicial discussions and attempts at interpretation, we find in the books no formula of modern words whereby these ancient ones are made satisfactory, plain and exact. They cannot be said universally to signify actual 'malice' or actual 'aforethought,' or any other actual state of the mind; at the same time, they do refer to a mental condition existing either in fact or in law."

"It has been well said that a perfectly exact and satisfactory definition of malice, * * * at once clear and concise, has been often attempted, but with no satisfactory permanent result. The differing minds of different courts have employed different * * * language in an attempt to convey substantially the same meaning; and, while a general similarity is apparent in all the definitions, the legal mind has not yet crystallized the substance of the term into a terse sentence * * * comprehensible to the average jury." "About as clear, comprehensive, and correct definition as the authorities afford is that 'malice is a condition of the mind which shows. a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken'." Harris v. State, 8 Tex. App. 90.

This last proof is cited in note to State v. McGuire 146 Ky. 449, 38 L. R. A. (N. S.) 1056, where the whole subject is considered. A similar definition, though not as complete, is approved in our early territorial reports.

" 'Malice' is a condition of the mind and heart void of social duty, and fatally bent on mischief." Territory v. Anderson, 4 N. M. (Gild.) 213, at page 223, 13 Pac. 21, at page 25.

[2] After a thorough research, we are inclined to the view that the following is as nearly a proper and adequate definition of malice as can be ascertained from the authorities available to us:

"Malice in the law of murder does not mean mere spite, ill will, or dislike as it is ordinarily understood, but it means that condition of mind which prompts one person to take the

life of another without just cause or provocation, and it signifies a state of disposition which shows a heart regardless of social duty and fatally bent on mischief." Words and Phrases, First Series, p. 4300, Malice in Criminal Law, and authorities cited.

It will thus be seen that malice, as above defined, does not include the element of deliberate intention or deliberation, and that malice may exist without such deliberate intention; in other words, this deliberate intention unlawfully to take away the life of a fellow creature is what might be called intensified or first degree malice because it contains, in addition to the condition of mind which prompts one to take the life of another, the element of deliberation—that is, the intent is a deliberate intent. If this deliberate intent to take away the life of a fellow creature is manifest by external circumstances capable of proof, it is express malice. Malice without any qualifying adjective to limit or expand its meaning, but as the term is used in the law of murder and as above defined, "shall be implied when no considerable provocation appears or when all the circumstances of the killing show a wicked and malignant heart."

"Aforethought" means thought of before hand for any length of time, however short, before the doing of the act. State v. Dickson, 78 Mo. 438, 440. It is in this respect an exact synnonym for "premeditation." "Premeditation" means nothing more nor less than thought of beforehand, as shown from the Latin derivation. In all cases of murder then we have premeditated malice. The statute defining express malice adds to premeditated malice an additional mental state, viz. deliberation; that is to say, there is not only premeditated malice present, but it is accompanied by a deliberation —that is, a thinking over with calm and reflective mind —to do the fatal act. If, as pointed out by the statute, this aggravated frame of mind can be established by external circumstances capable of proof, it is express malice. The malice is express because it appears in all such cases that there is an express intention to carry out the specific unlawful act. Its presence or absence

is always to be inferred· by the jury from the facts shown.

[**1**] On the other hand, premeditated malice is, under the statute, to be implied as a matter of law when no considerable provocation appears, or where all the circumstances of the killing show a wicked and malignant · heart; in other words, in all cases where there is a willful killing, without considerable provocation and under circumstances showing a wicked and malignant heart, the presence of premeditated malice is not an inference of fact by the jury, but it is an implication of law arising out of the killing itself. Under the various specifications in the statute, there must always · be express malice in first degree murder, except in those cases specified where the act is done in a certain way or by a certain means, as, for example, by means of poison. In the latter cases the specific intent is not so material, provided the accused intended to kill unlawfully. But in second degree murder premeditated malice is present without the aggravating circumstances of deliberation.

In this connection it is to be remembered that the jury is the judge of the facts. They may believe or doubt all or parts of the evidence for the prosecution or for the defense. This being so, they were at liberty to disbelieve the state's evidence as to lying in wait to kill deceased, or that defendant entertained express malice. On the other hand, they might have believed defendant killed without very considerable provocation and without justification on the ground of self-defense. Under such circumstances, defendant was guilty of murder in the second degree as the jury found.

We have then in this case a murder committed without that deliberate intention to take away the life of a fellow creature, or, as it is sometimes stated, without deliberation. It was a killing with malice, but without deliberation, and without the lying in wait. If the lying in wait is eliminated, as it must be in this case, for the verdict was not murder ·in the first degree, there remains an unlawful or felonious killing unexplained to

the satisfaction of the jury by the defendant's evidence of self-defense. From this unlawful killing without justification or excuse, for the jury disregarded the evidence of self-defense, the jury found the defendant guilty of murder in the second degree, which is murder with malice, but without deliberate intention or without deliberation, or without lying in wait, but with all the other elements of murder present, namely, a killing that was wilful or intentional, premeditated or thought of before (aforethought), felonious or unlawful— that is, without justification or excuse.

[3] Malice is not a conclusion of law, but an inference from the facts.

"The true rule, * * * we think, is that malice may be implied from the intentional killing, where the jury from the whole case before them, and beyond a reasonable doubt, find the additional fact that no circumstances of justification or excuse appear, and when there are no circumstances mitigating the killing to that of manslaughter. If there is reasonable doubt as to justification, there is reasonable doubt as to malice." Territory v. Lucero, 8 N. M. 543, at page 553, 46 Pac. 18, at page 21.

"We cannot agree that malice is to be regarded simply as a presumpttion of law. It is an element to be found from the facts by the jury. Malice is not a presumption of law arising from the fact of the killing, though the killing may be sufficient to justify the jury in finding malice. Territory v. Luero, decided at this term." 8 N. M. 543, and cases cited. Aguilar v. Territory, 8 N. M. 496, at page 506, 46 Pac. at page 344.

"Our only way of proving malice is by inferring it from the circumstances. Even should a party, when examined on the stand, say, 'I did the act maliciously,' the question would still remain as to whether the statement was to be believed. The mode of proof is not demonstration, but inference." Whart. Hom. (11th Ed.) par. 145; Whart. Crim. Law Ev. pars. 735 to 739; U. S. v. King (C. C.) 34 Fed. 302, at page 311.

The jury were entitled to draw this inference, that is, that the defendant was guilty of second degree murder, from the evidence and the killing and the failure of the defendant to satisfy them as to his plea of self-defense. The fact that the state failed to prove murder by lying in wait or murder in the first degree to their satisfaction beyond a reasonable doubt, and the defendant did not

prove justification by self-defense, left to the jury the right to say, under the evidence or absence of evidence of deliberation, that the homicide thus committed was murder in the second degree, or, as heretofore stated, murder with malice, but without deliberation. This malice the jury could infer from the evidence or absence of evidence, or it would have been implied in this case as a matter of law if the jury, as an inference of fact, found the essential conditions under the statute for the implication; that is, that no considerable provocation appeared, or that all the circumstances of the killing show a wicked and malignant heart. We are unable to point to any specific evidence, or say that particular evidence is evidence of murder in the second degree, but the inferences drawn from facts and circumstances or the absence of facts and circumstances tending to prove deliberation justified the jury in taking the view that the homicide was one with malice, as above defined, and without deliberation, but with all the other elements of murder present. Territory v. Kimmick, 15 N. M. 178, 106 Pac. 381; State v. Parks, 25 N. M. 395, 183 Pac. 433.

[4] It follows that the trial court was correct in submitting the issue of second degree murder to the jury, and the judgment should be affirmed; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

SYLLABUS BY THE COURT.

